L. O. LESIEUR *vs.* INHABITANTS OF RUMFORD.

Oxford.   Opinion April 20, 1915.

*Assumpsit.   Board of Health.   Contract.   Exceptions.   Physician.   Public Policy.   Quarantine.   Services.   Town.*

1.  It may be assumed that the contract in question is not expressly prohibited by statute; it does not stipulate for the doing of anything repugnant to morality, on the contrary the services contracted for were necessary and lawful to be done.

2.  Where the contract is not prohibited by statute and stipulates for nothing that is *malum in se* or *malum prohibitum*, if it clearly appears to be in violation of some well established rule of law, or that its tendency will be harmful to the interests of society, it is against the policy of the law to uphold and enforce it.

3.  It is well established as a general rule that one acting in a fiduciary relation to others is required to exercise perfect fidelity to his trust.

4.  The law, to prevent the neglect of such fidelity and to guard against any temptation to serve his own interests to the prejudice of his principal's, disables him from making any contract with himself binding on his principal.

5.  The invalidity of a contract entered into in violation of this rule does not necessarily depend upon whether the fiduciary intended to obtain an advantage to himself, but rather upon whether it affords him the opportunity, and subjects him to the temptation to obtain such advantage.

6.  The test is not whether harm to the public welfare has in fact resulted from the contract, but whether its tendency is that such harm will result.

7.  The members of a local board of health of a town, when making a contract under the statute for the care of persons in quarantine, act in a fiduciary capacity, and anything having a tendency to prevent their exercising the utmost fidelity is contrary to public policy, and will not be recognized as lawful and enforceable through the administration of the law.

8.  That a contract between a local board of health and one of its own members, for the care of a person in quarantine with smallpox, is of no binding force as a contract, because in violation of public policy. But that conclusion does not imply that the plaintiff may not be entitled to recover upon a *quantum meruit*.

On exceptions by plaintiff.   Exceptions overruled.

This is assumpsit upon an account annexed to recover for services as physician in caring for one Boussalari, who was quarantined, having smallpox.   Plea, general issue.

At the conclusion of the evidence for plaintiff, the presiding Justice directed a nonsuit and the plaintiff excepted thereto.

The case is stated in the opinion.

*Albert Beliveau,* for plaintiff.

*James B. Stevenson,* for defendant.

SITTING:   SPEAR, CORNISH, KING, BIRD, HANSON, JJ.

KING, J.   Action of assumpsit to recover for services performed in attending Wilfred Boussalari who was infected with smallpox and placed in quarantine.   The declaration contains three counts, (1) a count on an account annexed for ten days services at $10 per day, (2) a count declaring on an express contract alleged to have been made with the plaintiff by the board of health of Rumford whereby he was to perform the particular service at the specified price of $10 per day, and alleging that he performed the service for the period of ten days, (3) an omnibus count.   During the trial the plaintiff voluntarily struck out the omnibus count and stipulated that he would rely solely upon his alleged express contract.   At the close of the evidence for the plaintiff a nonsuit was ordered, and the case is before this court on exceptions to that ruling.

We think the evidence would have justified the jury in finding that the express contract was made as alleged; and no question was raised as to the performance of the services sued for.

The defendant claimed that the plaintiff was not entitled to recover because it was his duty to perform the services sued for in his capacity as "town physician."   But that claim is not sustainable under the evidence.   The plaintiff's contract with the town as town physician was to take care "of the town paupers" so far as they required medical aid.   There is no evidence that Boussalari was a pauper at the time he became infected with this contagious disease. And the statute expressly provides that persons who become needy and are assisted with necessary food, medicine, etc., while in quarantine on account of a contagious disease, shall not "be considered a pauper, or be subject to disfranchisement for that cause unless such

persons are already paupers as defined by the revised statutes."
Public Laws 1909, Chap. 25, Sec. 2.   *Eden* v. *Southwest Harbor*, 108
Maine, 489.

But it appears that the plaintiff was one of the three members of
the board of health of Rumford at the time the contract between
him and the board was made and while the services thereunder were
being performed, and for that reason the defendant contends that
the contract was illegal and unenforceable.   That is the vital ques-
tion presented.   Does such a contract so contravene public policy
that it should not be enforced?

It has been said that no exact definition of public policy has ever
been given.   The courts, however, have frequently approved Lord
Brougham's definition of public policy as the principle which declares
that no one can lawfully do that which has a tendency to be injurious
to the public welfare.   *Egerton* v. *Earl Brownlow*, 4 H. L., Cas. 1, 235.
This principle has been termed the policy of the law, or public policy
in relation to the administration of the law.   Precisely what public
policy is in any given case may be a difficult question to answer with
precision.   It has been well said, however, that whenever the courts
are called upon to scrutinize a contract which is clearly repugnant
to sound morality and civic honesty, they need not look long for a
well fitting definition of public policy, or hesitate in its practical
application to the law of contracts.   It may be said, as a general
statement of some of the principles underlying the doctrine of public
policy as applied to the law of contracts, that a contract is against
public policy if it contravenes some public statute, or tends clearly
to injure the public health, or the public morals, or to work injustice
and oppression and thereby injure the public welfare, or to impair the
public confidence in the purity of the administration of the law, "or
to undermine that sense of security for individual rights, whether of
personal liberty or of private property, which any citizen ought to
feel."

It may be assumed that the contract in question is not expressly
prohibited by statute.   Nor does it stipulate for the doing of any-
thing repugnant to morality, on the contrary the service contracted
for was necessary and lawful to be done.   Nevertheless, where the
contract is not prohibited by statute and stipulates for nothing that is
*malum in se* or *malum prohibitum*, if it clearly appears to be in viola-

tion of some well established rule of law, or that its tendency will be harmful to the interests of society, it is against the policy of the law to uphold and enforce it.

It is well established as a general rule that one acting in a fiduciary relation to others is required to exercise perfect fidelity to his trust, and the law, to prevent the neglect of such fidelity, and to guard against any temptation to serve his own interests to the prejudice of his principal's, disables him from making any contract with himself binding on his principal. The invalidity of a contract entered into in violation of this rule does not necessarily depend upon whether the fiduciary intended to obtain an advantage to himself, but rather upon whether it affords him the opportunity, and subjects him to the temptation, to obtain such advantage. The test is not whether harm to the public welfare has in fact resulted from the contract, but whether its tendency is that such harm will result.

Applying this rule to the contract declared on, and testing it by those principles which constitute public policy as recognized by the common law, and as evidenced by the trend of legislation and judicial decisions, we are constrained to hold that the contract does so far contravene public policy that it ought not to be upheld and enforced through the administration of the law.

Local boards of health are authorized by statute, and it is their duty, when any person is infected with a disease or sickness dangerous to the public health, to provide for the safety of the inhabitants, as they think best, by removing him to a separate house, if it can be done without great danger to his health, and by providing nurses, and other assistants and necessaries for such person, all the expenses thus incurred to be at his charge, or that of his parent or master, if able, otherwise at the expense of the town where the person fell sick if he resides there, but if he does not reside there the board of health has power to determine how much of the expenses shall be borne by that town and how much by the town of his settlement. See *Eden* v. *Southwest Harbor*, 108 Maine, 489, where the statutory provisions are compared and construed.

In making such provisions for the care of a person placed in quarantine the members of the board of health act in a fiduciary capacity. Their contracts therefor impose upon others the burden of paying the expenses thereby incurred. They are public officers clothed by the

legislature with power to incur expenses for others to pay.   The law requires of them perfect fidelity in the exercise of that power, and whatever has a tendency to prevent their exercise of such fidelity is contrary to the policy of the law, and should not be recognized as lawful and enforceable through the administration of the law.

It is suggested by the plaintiff that in making the contract in question there was no dishonesty, fraud or concealment on the part of the board or himself; that he acted openly and avowedly for himself, and that the other two members represented all others interested in the contract.   But we think that does not answer the requirements of the law.   In making provision for the care of Boussalari it was the plaintiff's duty as a member of the board of health to act for others and for their interests, and not for himself and for his interests.   That his personal interest in making the contract, and its performance, was antagonistic to a proper performance of his duties as a member of the board of health is most apparent.   As to the price to be paid for the services contracted for, as to the length of time they should continue, as to the manner in which they should be performed, in respect to all these, his personal interest was naturally in conflict with his duty as a member of the board.   The statute provides that no one having access to any person infected with a contagious disease shall mingle with the general public until he has complied with such sanitary precautions as the board of health may prescribe.   He cannot leave the premises without a certificate from the board that the necessary sanitary precautions required have been carried out.   The board has power to order the destruction of clothing and other articles of property which have been exposed to infection if they deem it necessary to prevent the spread of the infection.   The plaintiff was a physician, and undoubtedly the health officer of the board.   It is a reasonable inference that the other members of the board would be influenced by his suggestions even as to those precautions which it was the duty of the board to require of him as an attendant upon an infected person. The inevitable conclusion therefore is, that the making and performing of the contract declared on placed the plaintiff in a situation of temptation to serve his own personal interests to the prejudice of the interests of those for whom the law authorized and required him to act in the premises as an official.   Accordingly we think the contract must be regarded as violating a well established principle of law, one

which it is the policy of the law not to have violated, as is evidenced in uniform judicial decisions, and recognized by legislative enactments.

No member of a city government shall be interested, directly or indirectly, in any contract entered into by such government while he is a member thereof; and contracts made in violation thereof are void. R. S., Chap. 4, Sec. 39. No trustee, superintendent, treasurer or other person holding a place of trust in any State office or public institution of the State, shall be pecuniarily interested directly or indirectly in any contracts made in behalf of the State or of the institution in which he holds such place of trust, and any contract made in violation thereof is void. R. S., Chap. 121, Sec. 11. Assuming, as we do, that these statutory prohibitions do not directly apply to a member of a local board of health, yet the principles on which they are founded are quite as applicable to a contract made by a board of health with one of its own members, as to the contracts expressly inhibited in those statutes. They also clearly indicate that it is the policy of the State that persons, whom the law has placed in positions where they may make, or be instrumental in making, or in superintending the performance of, contracts in which others are interested, should not themselves be personally interested in such contracts. See *Opinion of the Justices*, 108 Maine, 548, and cases there cited.

In *Gaw* v. *Ashley*, 195 Mass., 173, it was held that the board of health of a city, who are authorized to appoint a quarantine physician under an ordinance giving him a compensation fixed by the city council with the right in extraordinary cases to charge to the sick under his care for medicine and medical attendance such sums as the board of health may approve, could not lawfully appoint one of their own members such quarantine physician. The decision was put on the ground that the appointment was against public policy because his personal interests under the appointment were inconsistent with the proper performance of his duties as a member of the board of health.

And in *Spearman* v. *City of Texarkana*, reported in 24 S. W., 883, (Ark.) where a city board of health, having power to employ a physician for the purpose, employed a member of their own board, who was a physician, to make a personal examination of a case of diphtheria said to exist in the city and which had caused the closing

of the public schools, it was held that the contract of employment being between the board and one of its members was against public policy and not enforceable. But the court there further held that while the agreement of employment was of no binding force as a contract, yet if the services were performed in good faith the plaintiff might recover upon a quantum meruit what his services were reasonably worth.

Our conclusion, therefore, in the case at bar is that the nonsuit was properly ordered. The plaintiff relied solely upon the express agreement made between him and the board of health of which he was a member. That agreement had no binding force as a contract, and is not enforceable through the administration of the law, because in violation of public policy. But this conclusion does not imply that the plaintiff may not be entitled to recover upon a *quantum meruit* what he is reasonably entitled to for the services performed of which the defendant has had the benefit.

*Exceptions overruled.*