STATE OF MAINE                                  SUPERIOR COURT
                                                   CIVIL ACTION
YORK, ss.                                    DOCKET NO. CV-07-408
                                             *G̶Ā̶b̶ ̶ ̶ ̶ ̶ ̶2̶/̶3̶ ̶ ̶ ̶ ̶*

JEAN HAMMOND and
GARY HAMMOND,

            Plaintiffs

v.                                                  **ORDER**

VERMONT MUTUAL INSURANCE
COMPANY,

            Defendant


This case comes before the Court on Plaintiffs' Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment, both being filed pursuant to M.R. Civ. P. 56.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about January 16, 2006, Plaintiff Jean Hammond stopped her vehicle at a red light on Westbrook Street in South Portland, Maine. Plaintiffs' Statement of Material Fact (PSMF) ¶ 7. While stopped, she was rear ended by a vehicle driven by Gregory Dugas. PSMF ¶ 7. The accident was entirely due to the negligence of Mr. Dugas.[1] PSMF ¶ 8. As a direct result of this accident, Ms. Hammond suffered bodily injury. PSMF ¶ 9.

The Plaintiffs have a personal auto policy (the Policy) with the Defendants, and this policy was in full force and effect at the time of the accident. PSFM ¶¶ 1-2. The

---

[1]     This fact was stipulated to in the January 15, 2009 Stipulation of the Parties.

Policy, which lists both Plaintiffs as the named insureds, provides Underinsured/Uninsured coverage in the amount of $500,000. PSMF ¶¶ 3-4. In addition to this, the Plaintiffs also had an umbrella policy with Defendants, with $1,000,000.00 in coverage. PSMF ¶ 4.

Under the Policy, Vermont Mutual promises to "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury' caused by the accident. PSMF ¶ 11, Exhibit A to the Complaint.

Moreover, a specific Endorsement attached to the Policy, which applies to uninsured motorist coverage, states:

> Part C – Uninsured Motorist Coverage
>
> Part C is replaced with the following:
>
> A. We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury' caused by an accident. . .
>
> With respect to coverage under Section 2.[2] Of the definition of 'uninsured motor vehicle,' we will pay under this coverage only if Paragraph 1. or 2. Below applies:
>
> 1. The limits of liability under any bodily injury liability bonds or policies applicable to the 'uninsured motor vehicle' have been exhausted by payment of judgments or settlements.

See Exhibits A to the Complaint, Endorsement, Uninsured Motorist Coverage, Page 1 of 3. (Herein this Endorsement section will be referred to as the Policy's "exhaustion clause")

---

[2]   Coverage under Section 2 applies when the insured is in an accident with a driver who has "a bodily injury liability bond or policy" which applies at the time of the accident, but which has a policy limit for the bodily injury liability less than the limit of the liability for the coverage of the insured. See Exhibits A to the Complaint, Endorsement, Uninsured Motorist Coverage, Page 1 of 3.

At the time of the accident, Mr. Dugas had an automobile insurance policy with Patriot Mutual Insurance Company (Patriot) with a policy limit of $50,000. PSMF ¶ 10. Defendants gave permission to Plaintiffs to negotiate with Defendants, and were told they could only settle the case for the full policy amount ($50,000.00). PSMF ¶ 15. Defendants understood that the Plaintiffs "would give Vermont Mutual Insurance company full credit for the $50,000.00 offset." PSMF ¶ 18.

After negotiating directly with Patriot, Plaintiffs entered in a settlement, whereby Patriot would pay the Plaintiffs $45,000. PSMF ¶ 16. This settlement contained a release, which provides:

> Should the Vermont Mutual Insurance Company, as the Hammonds underinsured motorist carrier, successfully receive a ruling, order or judgment through arbitration and/or from a court of competent jurisdiction that the Hammonds are precluding from pursuing Vermont Mutual as a result of the acceptance of a settlement amount less than policy limits from Patriot, (referred to as "Vermont's coverage defense") Patriot will pay its full $50,000.00 limit (an additional $5,000.00) to Mrs. Hammond in order to preclude Vermont's defense.

PSMF ¶ 17; Exhibit B to the Complaint.

Based on Plaintiffs' settlement with Patriot, Vermont Mutual deemed Plaintiffs in breach of their insurance contract by seeking underinsured motorist coverage under the Policy after settling with Patriot for an amount less than the full $50,000.00 available to them under Mr. Dugas' policy. Defendants Reply to Plaintiffs' Statement of Material Fact (Def. RSMF) ¶ 21. Plaintiffs contend that Ms. Hammond suffered more than $50,000 in damages as a result of the accident with Mr. Dugas, Plaintiffs' Additional of Material Facts (PAMF) ¶¶ 8-9. However, Vermont Mutual argues that while the Plaintiffs originally asserted that their damages exceed $50,000.00, "the Plaintiffs subsequently settled their claim against Mr. Dugas for $45,000.00 of the $50,000.00 in

coverage available to them, thereby valuing their total claim at that amount." DRSMF ¶ 8-9.

At no point has Vermont Mutual taken any statements from Plaintiffs, Gregory Dugas, witnesses to the accidents, or police officers connected with the accident investigation. Plaintiffs' Statement of Additional Facts (PSAF) ¶¶ 1-4.

On December 26, 2007, the Defendants filed a complaint alleging (Count I) breach of insurance contract, (Count II) breach of duty of good faith and fair dealing, and (Count III) violations of the Unfair Claims Practices Act, 24-A M.R.S.A. § 2436-A. On October 30, 2008, Plaintiffs' filed their present motion for partial summary judgment on the issue of whether Defendants can rely on the Policy's exhaustion clause as a bar to Plaintiffs' claim. On this same day, Defendants filed their present motion for summary judgment, asking the court for judgment on all counts based on the Policy's exhaustion clause.

## DISCUSSION

### I.    Standard of Review

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. When a defendant seeks summary judgment, a "plaintiff must establish a prima facie case for each element of her cause of action." *Champagne v. Mid-Maine Med. Ctr.*,

4

1998 ME 87, ¶ 9, 711 A.2d 842, 845. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

The language of an insurance contract is a question of law. *Foremost Ins. Co. v. Levesque*, 2005 ME 34, ¶ 7, 868 A.2d 244, 246. Ambiguities in the language of the contract will be construed against the insurer and "in favor of coverage." *Id.* Ambiguities exist if the language of the contract "is reasonably susceptible of different interpretations." *Id.*

I.      Plaintiffs' Motion for Partial Summary Judgment, Does the Policy's Exhaustion Clause Bar Plaintiff's Claim?

While the construction and interpretation of unambiguous insurance policy provisions are questions of law, *Id.*, when the terms of an insurance policy conflict with mandatory statutory provisions, the statutory provisions must prevail. *Tibbetts v. Maine Bonding and Cas. Co.*, 618 A.2d 731, 732 (Me. 1992). "Thus, the extent of an automobile liability insurer's coverage depends in the first instance on such mandatory statutory provisions as are incorporated into the insurance policy by operation of law and, in the second instance, on the terms of the policy itself." *Id.* The Court's role is not "to make a new contract for the parties by enlarging or diminishing its terms, but is to ascertain the meaning and intention of the contract actually made," *Jack v. Tracy*, 1999 ME 13, ¶ 8, 722 A.2d 869, 871 (quoting *Apgar v. Commercial Union Ins. Co.*, 683 A.2d 497, 500 (Me. 1996)).

A court cannot enforce a contract provision that contravenes public policy. *Allstate Ins. Co. v. Elwell*, 513 A.2d 269. 272 (Me. 1986; See, e.g., *Thacher Hotel, Inc. v. Economos*, 197 A.2d 59, 61 (1964). A contract is against public policy if it "clearly appears to be in violation of some well established rule of law, or that its tendency will be harmful to the interests of society." *Lesieur v. Inhabitants of Rumford*, 113 Me. 317, 319-20,

5

93 A. 838, 839 (1915). Agreements "are not to be lightly set aside." *Thacher Hotel*, 160 Me. at 26.

> Underinsured motor vehicle coverage protects
>
> persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured, *underinsured* or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, sustained by an insured person resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle. 24-A M.R.S.A. § 2902(1).

Under the statute, an underinsured motor vehicle is one that has liability insurance coverage, but in amounts "less than the limits of the injured party's uninsured vehicle coverage." *Id.* This statute allows an injured party "the same recovery which would have been available to him had the tortfeasor been insured to the same extent as the insured party. *Day v. Allstate Ins. Co.*, 1998 ME 278, ¶ 5, 721 A.2d 983, 985. To effectuate the intent of this law, Courts are to construe Section 2902 "liberally in favor of the insured victim and strictly against the insurer." *Westcott v. Allstate Ins.*, 397 A.2d 156, 169 (Me. 1979). The Law Court has stated that "the entire statutory scheme makes it evident that underinsured vehicle coverage is in the nature of gap coverage, not a substitute for primary coverage," allowing an injured party to recover damages somewhere between the limits of the tortfeasor's policy and the actual amount of damages under the injured party's policy. *Levine v. State Farm Mut. Auto Ins. Co.*, 2004 ME 33, ¶ 11 843 A.2d 24, 28.

Defendants argue that because Plaintiffs accepted less than the full amount of Dugas' Patriot policy that the coverage has not been exhausted, and pursuant to the Policy's plainly worded exhaustion clause, the Plaintiffs' are not entitled to a claim under their own policy. Conversely, Plaintiffs' argue that the exhaustion clause is against public policy. Therefore, they argue that they should be able to make a claim for

coverage under their policy, if, as they do here, they agree to credit Vermont Mutual for the total amount of Dugas' Patriot policy ($50,000.00), and not merely the amount they received after negotiating with Patriot ($45,000.00). This, they allege, amounts to a constructive exhaustion of Mr. Dugas' Patriot policy.

Suffice it to say, jurisdictions are split on this issue. Moreover, while there has been a Superior Court case that decided this very issue against Vermont Mutual, See *Richter v. Vermont Mutual Ins. Co.*, CUMSC-CV-07-181 (Me. Super. Ct., Cum. Cty., Feb. 6, 2008) (Delahanty, J.), the Maine Law Court has yet to decide this issue.

As mentioned, the policy of Maine's underinsurance vehicle coverage statute is to ensure that an injured party receive "the same recovery which would have been available to him had the tortfeasor been insured to the same extent as the insured party." *Day* 1998 ME 278, ¶ 5, 721 A.2d at 985. Here, while the actual amount of Plaintiffs' injuries is in dispute, it is not disputed that Plaintiffs' filed a claim worth more than $50,000.00 with Defendants. Thus, the operation of the exhaustion clause limits the Plaintiffs to a recovery which, if they could prove all damages alleged, will be less than the recovery they would have received had Mr. Dugas' held the same amount of motor vehicle liability insurance.

This Court acknowledges, as argued by Defendants, that insurance companies have a substantial and legitimate "concern that the insured settle with the tort-feasor for the maximum amount possible before the insured is allowed to seek underinsured benefits." *Ploen v. Union Ins. Co.*, 573 N.W.2d 436, 443 (Neb. 1998). While the Plaintiffs settled with Patriot for less than Mr. Dugas' policy limit[3], Vermont Mutual's substantial and legitimate concern is greatly mitigated, if not entirely eliminated, based on the fact

---

[3]     The Hammonds settled for nine-tenths of Mr. Dugas' policy limit because, according to them, they faced a financial crisis.

that Plaintiffs have agreed to credit Vermont Mutual with the entire amount of Mr. Dugas' policy. Under such circumstances, and assuming *arguendo* that Plaintiffs' prove that their damages exceed $50,000, Vermont Mutual would have to pay to Plaintiffs the same amount as would be required had Plaintiffs settled with Vermont Mutual for the total amount of Mr. Dugas' policy.

Therefore, being mindful that Section 2902 "makes it evident that underinsured vehicle coverage is in the nature of gap coverage, not a substitute for primary coverage," and based on Section 2902's policy of allowing an injured party "the same recovery which would have been available to him had the tortfeasor been insured to the same extend as the insured party," this Court finds that the exhaustion clause, as applied in this situation, is unenforceable as against public policy and cannot serve as a bar to Plaintiffs' insurance claim.

Defendants Motion for Summary Judgment on All Counts is Denied.

## CONCLUSION

This Court Grants Plaintiffs' motion for partial summary judgment, holding that the exhaustion clause is not a bar to Defendants' claim. Similarly, this Court Denies Defendant's motion for summary judgment.

Dated:        February 9, 2009

G. Arthur Brennan
Justice, Superior Court

Daniel Mawhinney, Esq. - PL
Elizabeth Peck, Esq. -   PL
Jonathan W. Brogan, Esq. - DEF
Lance E. Walker, Esq. - DEF

8