**OPINION OF THE JUSTICES of the Supreme Judicial Court Given Under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Questions Propounded by the House of Representatives in a Communication Dated March 10, 1993.
Answered April 26, 1993.

## STATE OF MAINE

In House March 4, 1993

### House Order Propounding Questions
### to the Justices of the Supreme Judicial Court

**WHEREAS,** it appears to the House of Representatives of the 116th Legislature that the following are important questions of law and that this is a solemn occasion; and

**WHEREAS,** the Constitution of Maine, Article VI, Section 3, provides for the Justices of the Supreme Judicial Court to render their opinion on these questions; and

**WHEREAS,** there is now before the 116th Legislature for its consideration Initiated Bill 1, Legislative Document 751, "An Act to Impose Term Limitations on Legislators, Constitutional Officers and the State Auditor"; and

**WHEREAS,** that bill has been submitted to the Legislature as a result of a petition for direct initiative of legislation pursuant to the Constitution of Maine, Article IV, Part Third, Section 18; and

**WHEREAS,** that bill may have constitutional infirmities that can not be corrected by revision or amendment; and

**WHEREAS,** it is important that the Legislature be informed as to the questions raised in this order; now, therefore, be it

**Ordered,** that in accordance with the provisions of the Constitution of Maine, the House of Representatives respectfully requests the Justices of the Supreme Judicial Court to give the House of Representatives their opinion on the following questions of law:

Question No. 1. If Legislative Document 751 becomes law, would its limitations on the terms of Legislators be valid in light of the lack of those limitations in the Constitution of Maine, Article IV, Parts First and Second?

Question No. 2. If Legislative Document 751 becomes law, would its limitations on the terms of the Secretary of State, Treasurer of State and Attorney General be valid in light of the lack of those limitations in the Constitution of Maine, Article V, Parts Second and Third and Article IX, Section 11?

Question No. 3. If the answer to question 1 or 2 is negative, must the initiative nevertheless be submitted in its current form to the voters at referendum pursuant to the Constitution of Maine, Article IV, Part Third, Section 18?

(Representative GWADOSKY)
SPONSORED BY: _____
TOWN: Fairfield

READ and

HOUSE OF REPRESENTATIVES
On Motion of REP. GWADOSKY
of FAIRFIELD

MAR 4 1993
Tabled Pending Tabling
Pursuant to House Rule 40
LATER TODAY ASSIGNED

CLERK

Unfinished Business

HOUSE OF REPRESENTATIVES
Speaker laid before the House and
on Motion of Speaker Martin
of Eagle Lake

TABLED PENDING PASSAGE
MAR 9 1993
pursuant to House Rule #40

C.
SPECIALLY ASSIGNED FOR Mar 10, 1993

HOUSE OF REPRESENTATIVES
Speaker laid before the House and
on Motion of Mr.
of _____ Passed

MAR 10 1993

CLERK

[Seal]

## 116th MAINE LEGISLATURE

### FIRST REGULAR SESSION–1993

| Legislative Document | No. 751 |
|---|---|

Initiated Bill 1 House of Representatives, March 2, 1993

**An Act to Impose Term Limitations on Legislators, Constitutional Officers and the State Auditor.**

Transmitted to the Clerk of the House on the 116th Maine Legislature by the Secretary of State on February 12, 1993 and 1,200 ordered printed.

(s) Joseph W. Mayo
JOSEPH W. MAYO, Clerk

---

**Be it enacted by the People of the State of Maine as follows:**

Sec. 1. 21–A MRSA c. 8 is enacted to read:

### CHAPTER 8

### LIMITATION OF TERMS

**§ 551. Short title**

This chapter may be known and cited as the "Term Limitation Act of 1993."

**§ 552. Definitions**

As used in this chapter, unless the context otherwise indicates, the following terms have the following meanings.

**1. Responsible electoral official.** "Responsible electoral official" means a public official who is responsible for accepting a nomination or nomination petition for an elected office and also means a public official who is responsible for placing the name of a person nominated for public office on a ballot, ballot label, calendar or other similar instrument.

**2. Term.** "Term" means a full term or any portion of a term served by an elected official in an office subject to the provisions of this chapter.

**§ 553. Limitations on terms**

Notwithstanding any other provision of law, consecutive terms in office are limited as follows.

**1. State Senate.** A person may not serve more than 4 consecutive terms as a state Senator.

**2. State Representative.** A person may not serve more than 4 consecutive terms as a member of the state House of Representatives.

**3. Secretary of State.** A person may not serve more than 4 consecutive terms as Secretary of State.

**4. Treasurer of State.** A person may not serve more than 4 consecutive terms as Treasurer of State.

**5. Attorney General.** A person may not serve more than 4 consecutive terms as Attorney General.

**6. State Auditor.** A person may not serve more than 2 consecutive terms as State Auditor.

This section applies to terms of office that begin on or after December 3, 1996.

## § 554. Exclusion from nomination, election and service

Notwithstanding any other provision of law, a person who is prohibited from service in an office as set forth in section 553 may not be nominated for or elected to that office. A responsible electoral official may not accept or certify such a person's nomination or nomination petition for an office subject to this chapter. A responsible electoral official may not print or cause to be printed such a person's name on a ballot, ballot label, calendar or other similar instrument for election to an office subject to this chapter. This section applies to nominations occurring and ballots printed after January 1, 1996.

**Sec. 2. Transition.** A person elected or appointed to an office subject to the provisions of this Act who is disqualified from service by this Act may complete that person's term of office if the term commences on or before December 2, 1996. The limitations imposed by this Act apply to the terms of office served by persons elected to serve in or persons elected to serve by the First Regular Session of the 118th Legislature and to all terms of office served by persons elected to serve thereafter.

### STATEMENT OF FACT

This bill establishes limitations on terms for state legislators, the Secretary of State, the Treasurer of State, the Attorney General and the State Auditor. The bill would limit those officeholders to 4 consecutive terms, except for the State Auditor, who is limited to 2 terms, beginning with terms of office commenced in the First Regular Session of the 118th Legislature.

### ANSWERS OF THE JUSTICES

To the Honorable House of Representatives of the State of Maine:

In compliance with the provisions of section 3 of article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following responses to the questions propounded by the House of Representatives on March 4, 1993.

■ On receiving a request for an advisory opinion from either house of the Legislature or the Governor, we must first determine whether we have constitutional authority to answer the propounded questions. *Opinion of the Justices*, 460 A.2d 1341, 1345 (Me.1982). The Maine Constitution obliges us "to give [our] opinion upon important questions of law, and upon solemn occasions, when required by the Governor, Senate, or House of Representatives." Me. Const. art. VI, § 3.

■ We are to answer only questions pertaining to matters of "instant, not past or future concern; things of live gravity." *Opinion of the Justices*, 355 A.2d 341, 389 (Me.1976) (citation omitted). "The anticipated need for the advice must not be 'tentative, hypothetical and abstract.'" *Id.* (quoting *Opinion of the Justices*, 330 A.2d 912, 915 (Me.1975)). In this instance, the House of Representatives has before it an initiated bill, (L.D. 751 (116th Legis.1993)), seeking to impose term limits on legislators and various constitutional offices.[1] Pursuant to article IV, part third, section 18, clause 2 of the Maine Constitution, that initiative, "unless enacted without change by the Legislature at the session at which it is presented, shall be submitted to the electors...." Therefore, the Legislature must either enact L.D. 751 without amendment[2] or decline to enact L.D. 751 and submit the proposal to the electors. The

1. The proposed legislation also seeks to impose term limits on the Office of State Auditor, which is not an office created by the Maine Constitution. That office is not a subject of the propounded questions.

2. Generally, no solemn occasion exists when the matter on which an opinion is sought is "pending in committee and not yet before the inquiring branch of the Legislature." *Opinion of the Justices*, 370 A.2d 654, 667 (Me.1977). The reason for the rule is that the proposed legislation

might not reach the Legislature in its current form. *Opinion of the Justices*, 355 A.2d 341, 389 (Me.1976). Accordingly, we have recognized an exception to that rule when "issues raised by the questions would be involved in whatever form the bill came out of Committee." *Id.* Because the initiated bill must be enacted by the Legislature in its present form or be submitted to the voters, the general rule is inapposite and we are free otherwise to find that a solemn occasion exists.

House of Representatives has expressed substantial doubt as to the bill's constitutionality based on advice from the Attorney General. The House's need for guidance in the discharge of its obligations is not merely hypothetical and constitutes an issue of instant concern despite the fact that the Legislature could decline to enact L.D. 751 and allow it to be submitted to the voters. *See Opinion of the Justices,* 370 A.2d 654 (Me.1977) (solemn occasion existed even though the Senate could have declined to act on a pending initiative and the voters could have rejected the initiative at an election); *Opinion of the Justices,* 343 A.2d 196, 202 (Me.1975) (solemn occasion existed when Governor was required to either act or refuse to act in pending complaint seeking removal of a District Attorney and Governor professed doubts based on legal advice regarding the constitutionality of the statute under which he was requested to act).

We conclude that the questions propounded constitute important questions of law on a solemn occasion, *see Opinion of the Justices,* 370 A.2d at 667; *Opinion of the Justices,* 355 A.2d at 389. We answer questions 1 and 2 in the affirmative and therefore do not answer question 3.

 At issue is the scope of legislative power, which is declared to be plenary and subject only to the limitations of the state and federal constitutions. "The Legislature, with the exceptions hereinafter stated, shall have full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State, not repugnant to the Constitution, nor to that of the United States." Me. Const. art. IV, pt. 3, § 1. Legislative power is defined by limitation, not by grant, and is absolute except as expressly or by necessary implication restricted by the Constitution. "The people of this State retain all powers not enumerated. The Legislature of Maine may enact any law of any character or on any subject, unless it is prohibited, either in express terms or by necessary implication, by the Constitution of the United States or the Constitution of this State." *Baxter v. Waterville Sewerage District,* 146 Me. 211, 215, 79 A.2d 585, 588 (1951). *See also Ace Tire Co. v. Municipal Officers of Waterville,* 302 A.2d 90, 96 (Me.1973) (interpreting article IV, part third, section 1 of the Maine Constitution as granting the Legislature plenary power "except as it may have been circumscribed expressly or inferentially by the constitution of the state or nation"); *Town of Warren v. Norwood,* 138 Me. 180, 192–93, 24 A.2d 229, 235 (1941) (stating that legislative power is "absolute and all-embracing except as expressly or by necessary implication restricted by the Constitution"). Thus the inquiry is whether the authority of the Legislature, or the authority of the electors through the process of initiative and referendum, Me. Const. art. IV, pt. 3, § 18, has been limited so that the proposed statutory qualifications for members of the Legislature and other constitutional officers may not be validly enacted.

 In reviewing legislative enactments, we presume that the legislation is constitutional and invalidate it only if there is a clear showing by "strong and convincing reasons" that it conflicts with the Constitution. *Laughlin v. City of Portland,* 111 Me. 486, 489, 90 A. 318, 319 (1914). In the present context, because the Maine Constitution does not expressly grant or deny legislative authority to prescribe qualifications for members of the Legislature and other constitutional officers beyond those enumerated, conflict between the proposed legislation and the Constitution could arise only by implication.

 There are no qualifications set forth in the Constitution for the offices of secretary of state, treasurer, or attorney general. Me. Const., art. V, pts. 2 and 3; art. IX, § 11.[3] Thus we find no implicit basis for

---

**3.** The Constitution's sole limitation on the office of attorney general is to prohibit that official from holding certain incompatible offices. Me. Const. art. IX, § 2. The treasurer is subject to the same limitation and is prohibited from engaging in business or commerce while in office. Me. Const. art. V, pt. 3, § 3. We previously have suggested that the process set forth in the Constitution (Me. Const. art. IX, § 5) for removing constitutional officers is exclusive. *See*

restricting the power residing in the Legislature to enact reasonable qualifications for these offices. *See* Annotation, *Legislative Power to Prescribe Qualifications for or Conditions to Constitutional Office*, 34 A.L.R.2d 155, 174–75 (1962); *see e.g., State ex. rel. Askew v. Thomas*, 293 So.2d 40, 42 (Fla.1974) (upholding a statute requiring residency for school board members in the absence of any constitutional qualifications).

 Certain requirements are specified in the Constitution for representatives and senators. Those requirements consist of a period of citizenship, a minimum age, a period of state residency, and a period of residency in the district that the official will represent. The requirements are the same for representatives and for senators except for a difference in the minimum age. Me. Const. art. IV, pt. 1, § 4; art. IV, pt. 2, § 6.[4] The requirements are stated in the negative and expressly disqualify any person not a citizen, or not a resident, or under the stated age.[5] Such a specific statement of disqualification does not clearly and unmistakably give rise to an implication that the Legislature is without authority to prescribe additional qualifications for representatives or senators, provided the added qualifications are reasonable, do not conflict with those in the Constitution, and violate no guaranteed rights. *See* Annotation, *Legislative Power to Prescribe Qualifications for or Conditions to Constitutional Office*, 34 A.L.R.2d at 166–68; *see e.g., Boughton v. Price*, 70 Idaho 243, 247, 215 P.2d 286, 290 (1950).

Prescribing additional qualifications by statute does implicate the constitutionally guaranteed right of suffrage, but reasonable restrictions on the eligibility for holding office only incidentally involve that right. Me. Const. art. II, § 1. *Cf. Snider v. Shapp*, 45 Pa.Cmwlth.Ct. 337, 405 A.2d 602, 613 (1979) (finding that a statute requiring candidates to file financial disclosure statements and proscribing conduct involving conflicts of interest did not unconstitutionally limit the field of candidates from which voters might choose).

It is our opinion that the limitations contained in L.D. 751 on the terms of office for secretary of state, treasurer, attorney general, representatives, and senators are within the legislative power and, if enacted, would be valid.

Respectfully submitted,

/s/ Daniel E. Wathen
Daniel E. Wathen
Chief Justice
/s/ David G. Roberts
David G. Roberts
/s/ Samuel W. Collins, Jr.
Samuel W. Collins, Jr.
/s/ Paul L. Rudman
Paul L. Rudman
/s/ Howard H. Dana, Jr.
Howard H. Dana, Jr.
Associate Justices

## ANSWER OF JUSTICE GLASSMAN AND JUSTICE CLIFFORD

To the Honorable House of Representatives of the State of Maine:

We do not concur in the opinion of our colleagues on the Court and pursuant to Article VI, Section 3 of the Maine Constitution, we, the undersigned Justices of the

---

*Opinion of the Justices,* 343 A.2d 196, 203 (Me. 1975).

**4.** No person shall be a member of the House of Representatives, unless he shall, at the commencement of the period for which he is elected, have been 5 years a citizen of the United States, have arrived at the age of 21 years, have been a resident in this State one year; and for the 3 months next preceding the time of his election shall have been, and, during the period for which he is elected, shall continue to be a resident in the district which he represents.
Me. Const. art. IV, pt. 1, § 4.

The Senators shall be 25 years of age at the commencement of the term, for which they are elected, and in all other respects their qualifications shall be the same as those of the Representatives.
Me. Const. art. IV, pt. 2, § 6.

**5.** In contrast, the Constitution states in the affirmative the qualifications for voting.

Every citizen of the United States of the age of 18 years and upwards ... shall be an elector for Governor, Senators and Representatives, in the city, town or plantation where his or her residence has been established....
Me. Const. art. II, § 1.

Supreme Judicial Court, have the honor to submit our separate response to the questions propounded by the House of Representatives on March 4, 1993.

Question 3 asks whether L.D. 751 must be sent to the voters even if it is the opinion of the justices that the bill is unconstitutional. We would answer that question in the affirmative. Me. Const. art. IV, pt. 3, § 18 requires that the initiated bill be submitted to the voters in its current form regardless of our opinion as to its constitutional validity. *See Farris ex rel. Dorsky v. Goss*, 143 Me. 227, 231, 60 A.2d 908, 911 (1948) (right of the people to enact legislation is an absolute one and cannot be abridged by any direct or indirect action of the legislature). Because we would answer Question 3 in the affirmative, Questions 1 and 2 do not, in our view, constitute important questions of law upon a solemn occasion requiring an advisory opinion. We therefore decline to answer them.

An advisory opinion is an "extraordinary responsibility" given "outside the context of any concrete, fully developed factual situation and without the benefits of adversary evidentiary and [fully developed] legal presentations." *Opinion of the Justices*, 437 A.2d 597, 610 (Me.1981). Such opinions are subjected by the constitution to "carefully confined conditions," *id.*, and may be rendered only on important questions of law on solemn occasions. Me. Const. art. VI, § 3. " 'The matters with regard to which advisory opinions are proper are those of instant, not past nor future, concern; things of live gravity.' " *Opinion of the Justices*, 260 A.2d 142, 146 (Me.1969) (quoting *Opinion of the Justices*, 134 Me. 510, 513, 191 A. 487, 488 (1936)).

The subject of Questions 1 and 2 is not related to any potential procedural defect in the pending initiated bill that could affect whether it can be sent to referendum. Rather, Questions 1 and 2 ask about the substantive constitutional validity of L.D. 751 and whether it will be enforceable if enacted. Although the legislature has the option of acting on L.D. 751, the initiated measure cannot be amended nor can it be kept from voter referendum except by en-

actment in its current form. The legislature may submit a competing measure to referendum along with L.D. 751 pursuant to Me. Const. art. IV, pt. 3, § 18, but there is nothing before us to indicate that a competing measure free from the same constitutional questions is being considered.

We are aware that the Court has in the past given an advisory opinion concerning an initiated bill. *See Opinion of the Justices*, 370 A.2d 654 (Me.1977). The circumstances leading to the rendering of that advisory opinion, however, were very different from the present situation. The 1977 initiated bill proposed a repeal of the uniform property tax. That proposal, as well as several specific bills that were pending before the legislature, had a direct and immediate effect on the Governor's proposed budget for the ensuing fiscal year (commencing just a matter of months from the date the advisory opinion was rendered). The legislature was required to enact a budget prior to the start of the fiscal year, and it sought our opinion concerning the effective dates of the various bills, including the initiated bill, in order to carry out that responsibility. There is no such immediacy present here. L.D. 751, if enacted by the people in referendum, will not be effective until 1996.

Art. IV, pt. 3, § 18 reserves to the people the power to enact legislation directly through the initiative and referendum process. We should not interfere with or handicap the people's right of franchise by offering an opinion on the enforceability of an initiated measure before the electorate has expressed its view. *See Allen v. Quinn*, 459 A.2d 1098, 1102–03 (Me.1983); *see also Farris*, 143 Me. at 231, 60 A.2d at 911. As the United States Supreme Court has said, "The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity." *Parker v. Los Angeles County*, 338 U.S. 327, 333, 70 S.Ct. 161, 163–64, 94 L.Ed. 144 (1949). Other state courts have similarly concluded that it is inappropriate to address the constitutionality of an initiative measure before it has been presented to the voters. *See, e.g., Tilson v. Mofford*, 153 Ariz. 468, 470, 737

P.2d 1367, 1369 (1987) (court is powerless to predetermine constitutional validity of substance of an initiated measure but can determine procedural issues); *Associated Taxpayers of Idaho, Inc. v. Cenarrusa*, 111 Idaho 502, 503, 725 P.2d 526, 527 (1986) (*Donaldson, C.J.* specially concurring) (any action by the court on the initiated measure's constitutionality is premature and interferes with the people's right to exercise their franchise); *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo.1990) (court's preelection function limited to whether constitutional requirements relating to procedure and form of initiative petitions have been met); *State ex rel. Montana Citizens v. Waltermire*, 224 Mont. 273, 729 P.2d 1283, 1285 (1986) (court will assume jurisdiction over preelection challenges only when challenge is procedural or measure is unconstitutional on its face); *State ex rel. Cramer v. Brown*, 7 Ohio St.3d 5, 454 N.E.2d 1321, 1322 (1983) (court will not consider preelection claim of unconstitutionality).

The voters may reject this legislation. Even if enacted, the measure is not effective until 1996. Its constitutionality can then be determined in the "context of [a] concrete, fully developed factual situation and with[ ] the benefits of adversary evidentiary and [fully developed] legal presentations." *Opinion of the Justices*, 437 A.2d at 610.

We answer Question 3 in the affirmative. We respectfully decline to answer Questions 1 and 2.

Respectfully submitted,

/s/ Caroline D. Glassman
Caroline D. Glassman

/s/ Robert W. Clifford
Robert W. Clifford
Associate Justices