**OPINION OF THE JUSTICES of the Supreme Judicial Court Given Under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Questions Propounded by the House of Representatives in a Communication Answered April 3, 1996.

694

## STATE OF MAINE

In House March 26, 1996

**WHEREAS**, it appears to the House of Representatives of the 117th Legislature that the following are important questions of law and that this is a solemn occasion; and

**WHEREAS**, the Constitution of Maine, Article VI, Section 3, provides for the Justices of the Supreme Judicial Court to render their opinion on important questions of law upon solemn occasions; and

**WHEREAS**, there is now before the 117th Legislature for its consideration Initiated Bill 6, Legislative Document Number 1827, "An Act to Seek Congressional Term Limits"; and

**WHEREAS**, the bill may have constitutional infirmities that can not be corrected by revision or amendment; and

**WHEREAS**, it is vital that the Legislature be informed as to the questions propounded in this order; now, therefore, be it

**ORDERED**, that, in accordance with the provisions of the Constitution of Maine, the House of Representatives respectfully requests the Justices of the Supreme Judicial Court to give the House of Representatives their opinion on the following questions of law:

Question 1. If initiated bill 6 becomes law, would section 2 of the bill violate the constitutional principle that one Legislature may not bind future Legislatures?

Question 2. Is it within the constitutional authority of the Legislature of the State of Maine, or the electors of the State of Maine by means of initiated legislation, to direct the members of the State's congressional delegation, the Governor or members of the Maine Senate or Maine House of Representatives to use their powers to make application to the

Congress of the United States for a Constitutional Convention, as proposed in sections 2, 3 and 4 of Initiated Bill 6?

Question 3. If the answer to question 1 is in the affirmative or the answer to question 2 is in the negative, must Initiated Bill 6 nevertheless be submitted in its current form to the voters at referendum pursuant to the Constitution of Maine, Article IV, Part Third, Section 18 if the Legislature fails to enact it in its current form?

### Page 1–LR3183(1)

Question 4. In view of the fact that there is some concern that the question that appeared on the printed petition for Initiated Bill 6 does not accurately describe the content of Initiated Bill 6, particularly that portion of the initiative that directs the Legislature, the Governor and the State's congressional delegation to call for a Constitutional Convention, is it within the authority of the Legislature, pursuant to the Maine Constitution, Article IV, Part Third, Section 20, to reform the ballot question prepared by the Secretary of State for Initiated Bill 6?

SPONSORED BY: /s/ Harry L. True

(Representative TRUE)

TOWN: Fryeburg

### Page 2–LR3183(1)

To the Honorable House of Representatives of the State of Maine:

In compliance with the provisions of section 3 of article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following responses to the questions propounded by the House of Representatives on March 26, 1996.

■ We begin with a reminder that the opinions propounded pursuant to section 3, article VI of the Constitution of Maine are not binding decisions of the Supreme Judicial Court. They are the opinions of the individual Justices, rendered within a tight time

schedule and without the benefit of full factual development, oral argument, or full briefing by all interested parties. In the present case, the opinion is requested in the waning days of the legislative session, and extensive study and analysis is not possible. The presented questions are complex and probe to the very heart of our state and federal forms of government. Notwithstanding these limitations, we offer the following advice in furtherance of our constitutional obligation.[1]

■ Question 1 asks, "If initiated bill 6 becomes law, would section 2 of the bill violate the constitutional principle that one Legislature may not bind future Legislatures?" As noted by the Attorney General in his brief to the Justices, the question really asks, "If this bill becomes law and subsequent Legislatures do not follow it, will the law be enforceable by the courts?" The answer to this question is clearly in the negative. This bill, if enacted, will be on equal footing with every other law passed by the Legislature: subsequent sessions of the Legislature may choose to follow it, or they may choose to repeal it, either expressly or by implication. *See Manigault v. Springs,* 199 U.S. 473, 487, 26 S.Ct. 127, 133, 50 L.Ed. 274 (1905) (bill requiring Legislature to give direct notice to all interested parties and to publish the notice in a major newspaper, prior to the granting of a private right or privilege by special bill, could be "repealed, amended, or disregarded by the legislature" and was "not binding upon any subsequent legislature."), *cited by Sierra Club v. Froehlke,* 816 F.2d 205, 215 (5th Cir.1987) ("courts cannot set aside legislation because it is inconsistent with prior legislation"), *cited also in Peterson v. United States Department of the Interior,* 899 F.2d 799, 808 (9th Cir.1990) (upholding Congressional alteration of a previously enacted government contract, recognizing "the fundamental principle that Congress always has the power to amend, repeal or ignore legislation passed by earlier congresses"). To read this statute as binding upon future Legislatures is to read it as an attempt to amend the Constitution of

---

1. We have previously opined that questions posed by the Legislature regarding the constitutionality of a proposed initiative present us with "important questions of law, ... upon [a] solemn occasion[ ]" and we will therefore address the merits of the Legislature's questions. Me. Const. art. VI, § 3 (1985). *See, Opinion of the Justices,* 623 A.2d 1258 (Me.1993).

the State of Maine through improper means. Such a bill would not be enforced by the courts against future Legislatures.

We now address Question Two, which asks:

Is it within the constitutional authority of the Legislature of the State of Maine, or the electors of the State of Maine by means of the initiated legislation, to direct the members of the State's congressional delegation, the Governor or members of the Maine Senate or Maine House of Representatives to use their powers to make application to the Congress of the United States for a Constitutional Convention, as proposed in sections 2, 3 and 4 of Initiated Bill 6?

The question actually poses six different issues of law: 1) may the Legislature direct the activities of the congressional delegation in this manner; 2) may the electors direct the activities of the congressional delegation in this manner; 3) may the Legislature direct the activities of the Governor in this manner; 4) may the electors direct the activities of the Governor in this manner; 5) may the Legislature direct the activities of the Legislature in this manner; and 6) may the electors direct the activities of the Legislature in this manner?

 Issues one and two of Question Two are clearly answered in the negative. Although they may certainly petition or urge, neither the electors of the State of Maine nor the Legislature of the State of Maine may control the state's delegates to the United States Congress in the performance of their congressional duties. Such an exercise of control would violate the essence of federalism. Congressional delegates, although elected by the states and commonly viewed as representatives of the interests of their home states, act on behalf of the entire nation. The United States Supreme Court recently held as unconstitutional a state's attempt to directly limit the term limits of its own congressional delegates, stating:

In [our] National Government, representatives owe primary allegiance not to the people of a State, but to the people of the Nation.... [E]ach Member of Congress is 'an officer of the union, deriving his

powers and qualifications from the constitution, and neither created by, dependent upon, nor controllable by, the states.... Those officers owe their existence and functions to the united voice of the whole, not of a portion, of the people.' Representatives and Senators are as much officers of the entire union as is the President.

*U.S. Term Limits, Inc. v. Thornton,* —— U.S. ——, ——, 115 S.Ct. 1842, 1855, 131 L.Ed.2d 881 (1994) (citations omitted).

 Issues three and four of Question Two ask whether the Legislature or the electors may constitutionally direct that

[t]he Governor ... use all of the Governor's delegated powers to aid the Legislature in making the application specified in Sec. 2 to the Congress of the United States under Article V of the United States Constitution.

The Governor of the State of Maine (or of any state in the nation) has no delegated powers under Article V of the United States Constitution. Thus, the proposed initiative, by requiring the Governor to "use all of [his] delegated powers" to promote the proposed amendment, fails to indicate any specific duties imposed upon the Governor. As a result, it is our opinion that Section 3 is merely precatory language, having the effect of a request, rather than a directive, to the Governor.

 Because Question Two is stated in the present tense, issue five of Question Two asks only whether the current Legislature of Maine can order itself to make an application to the United States Congress for a constitutional convention? We stated in our response to Question One that the current Legislature cannot bind future Legislatures to obey the directives of this proposed legislation. It is clear, however, that the current Legislature may bind itself. By enacting this law by simple majority, the Legislature would bind itself to make an application to Congress for a constitutional convention in the time remaining, if any, of the legislative session. The Legislature could also vote directly in favor of an application to Congress for a constitutional convention. Although Section 2 of the proposed bill would be proce-

durally awkward, it is not constitutionally prohibited.

 Issue six of Question Two asks whether the electors of the State of Maine may direct the Legislature of the State of Maine to make an application to the United States Congress for a constitutional convention? Our answer to Question One, that the present Legislature cannot bind future Legislatures without passing a constitutional amendment, applies equally to the electors: the initiative, if passed, cannot be binding upon future sessions of the Legislature. In contrast to our response to issue five, however, we are of the opinion that the electors are also unable to bind the *current* Legislature in this manner. The provision for amending the United States constitution is stated as follows:

The Congress, whenever two thirds of both Houses shall deem it necessary, shall propose Amendments to this Constitution, or, on the Application of the Legislatures of two thirds of the several States, shall call a Convention for proposing Amendments, which, in either Case, shall be valid to all Intents and Purposes, as Part of this Constitution, when ratified by the Legislatures of three fourths of the several States, or by Conventions in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Congress.... 

U.S. Const. art. V (1985). Thus, while article V contemplates ratification of amendments either by the legislatures of the states or by popular vote via Conventions, the article specifically reserves the power to propose amendments to Congress and the state legislatures. Although they may petition or urge the Legislature to do so, it is not within the power of the electors to propose a constitutional amendment. The proposed initiative, if enacted by a referendum vote, would allow the electors to do indirectly that which they are forbidden to do directly. This aspect of the proposed initiative does not conform to the clearly stated procedural requirements of article V and would not appear to be constitutional.

 Question Three essentially asks, must the Legislature submit an initiated bill without any amendment to the voters at ref-

erendum, notwithstanding the fact that the bill is unconstitutional as written? The answer is clearly in the affirmative. The Maine Constitution provides that

The [initiated bill] thus proposed, unless enacted without changed by the Legislature at the session at which it is presented, shall be submitted to the electors together with any amended form, substitute, or recommendation of the Legislature, and in such manner that the people can choose between the competing measures or reject both.

Me. Const. art. IV, pt. 3, § 18, cls. 2 (1985). The word *shall* is a mandatory directive to submit the question to referendum. The clause contains no exceptions to such a directive. *See Wagner v. Secretary of State,* 663 A.2d 564, 566 n. 3 (Me.1995) (stating, prior to addressing the substantive constitutional challenges to a proposed initiative, that "[s]ince the Legislature has not enacted the initiative without change, it must be referred to the electors."). *See also, Opinion of the Justices,* 623 A.2d 1258, 1264 (Me.1993) (answer of Glassman and Clifford, JJ.) ("Me. Const. art. IV, pt. 3, § 18 requires that the initiated bill, [if not enacted by the Legislature], be submitted to the voters in its current form regardless of our opinion as to its constitutional validity."), *citing Farris ex rel. Dorsky v. Goss,* 143 Me. 227, 60 A.2d 908, 911 (1948) ("The right of the people ... to enact Legislation ... is an absolute one and cannot be abridged directly or indirectly by any action of the legislature.").

 Question Four asks:

In view of the fact that there is some concern that the question that appeared on the printed petition for Initiated Bill 6 does not accurately describe the content of Initiated Bill 6, particularly that portion of the initiative that directs the Legislature, the Governor and the State's congressional delegation to call for a Constitutional Convention, is it within the authority of the Legislature, pursuant to the Maine Constitution, Article IV, Part Third, Section 20, to reform the ballot question prepared by the Secretary of State for Initiated Bill 6?

The Maine Constitution provides that

The full text of a measure submitted to a vote of the people under the provisions of

the Constitution need not be printed on the official ballots, but, *until otherwise provided by the Legislature*, the Secretary of State shall prepare the ballots in such a form as to present the question or questions concisely and intelligibly.

Me. Const. art. IV, pt. 3, § 20 (1985) (emphasis added). We read this sentence as a grant to the Legislature of the power to designate which official(s) will be responsible for drafting the ballot question on a citizen initiative. The Legislature has exercised that power by providing that the Secretary of State shall draft the ballot question, and that he will do so at the time he certifies the initiative petition for circulation. 21–A M.R.S.A. Section 901(4) (1993 & Supp.1995). This statute may be altered or repealed by the Legislature at any time, and the authority to draft the ballot question may be vested in another named official.

It is clear that the Maine Constitution preserves the option of the Legislature to delegate the authority to draft ballot questions to any named officer, and perhaps even to reserve the power unto itself. It is doubtful, however, whether the Legislature may interfere with the exercise of that delegated authority with respect to the drafting of this specific initiative ballot question, which has proceeded so far along in the initiative process. Although the constitution does not explicitly limit the Legislature's power in this manner, a finding of any additional implied powers under this clause would be contrary to the spirit of the citizen initiative provision. *See, e.g.*, Op.Me.Att'y Gen. 86–9, 1986 WL 288888 ("[T]he entire initiative process is designed as a means of overcoming a Legislature that refuses to enact the measure itself.") Accordingly, we answer Question Four in the negative.

Dated at Portland, Maine, this third day of April, 1996.

Respectfully submitted:

/s/ Daniel E. Wathen
Daniel E. Wathen
Chief Justice

/s/ David G. Roberts
David G. Roberts

/s/ Paul L. Rudman
Paul L. Rudman

/s/ Howard H. Dana, Jr.
Howard H. Dana, Jr.
Associate Justices

## ANSWER OF JUSTICE GLASSMAN, JUSTICE CLIFFORD AND JUSTICE LIPEZ

To the Honorable House of Representatives of the State of Maine:

We do not concur in the opinion of our colleagues on the Court and pursuant to article VI, section 3 of the Maine Constitution, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit our separate response to the questions propounded by the House of Representatives on March 26, 1996.

We first address Question Three that essentially asks whether L.D. 1827 must be submitted to the voters even if it is the opinion of the Justices that the bill is unconstitutional. We agree with our colleagues that the question must be answered in the affirmative. Me. Const. art. IV, pt. 3, § 18 (Supp.1995) requires that the initiated bill be submitted to the voters regardless of our opinion as to its constitutional validity. The right of the people to enact legislation is absolute and cannot be abridged by any direct or indirect action of the Legislature. *Farris ex rel. Dorsky v. Goss*, 143 Me. 227, 231, 60 A.2d 908 (1948). We also agree with our colleagues that Question Four should be answered in the negative. Finally, we also agree with our colleagues that, in light of the fact that the request for an advisory opinion is made in the closing days of the legislative session, "extensive study and analysis [of the issues] is not possible."

The answer to Question Three prompts us to reach a different conclusion from our colleagues as to Questions One and Two. We believe that Questions One and Two do not constitute important questions of law upon a solemn occasion requiring an advisory opinion and, therefore, decline to answer them. Although the Legislature has the option of enacting L.D. 1827 in its current form, the initiated measure cannot be amended nor can it be kept from the voter referendum. The Legislature may submit a competing mea-

sure to voter referendum along with L.D. 1827, pursuant to Me. Const. art. IV, pt. 3, § 18, but there is nothing before us to indicate that a competing measure free from the same constitutional questions is being considered. *Opinion of the Justices,* 623 A.2d 1258, 1264 (Me.1993).

"The matters with regard to which advisory opinions are proper are those of instant, not past nor future, concern; things of live gravity." *Opinion of the Justices,* 134 Me. 510, 513, 191 A. 487 (1936). Only recently the Law Court held that whether a proposed initiative would be ineffective as an attempt to limit future legislative action is a question not ripe for judicial review prior to approval by the voters. *Wagner v. Secretary of State,* 663 A.2d 564, 567 (Me.1995). Ripeness concerns the fitness of an issue for judicial decision and the hardship to the parties of withholding court consideration. *Maine Pub. Serv. Co. v. Public Util. Comm'n,* 524 A.2d 1222, 1226 (Me.1987). Like the proposed initiative at issue in *Wagner,* this measure may never become effective, and we thus are not faced with a concrete, certain, or immediate legal problem. Except in rare circumstances, not present here, we believe "it is inappropriate to address the constitutionality of an initiative measure before it has been presented to the voters," *Opinion of the Justices,* 623 A.2d at 1264, and prefer to allow the electorate to express its view prior to rendering our opinion on the measure.

We believe we should not interfere with or in any way handicap the people's right of franchise by offering an opinion on the enforceability of an initiated measure before the electorate has expressed its view.

Accordingly, we answer Question Three in the affirmative and Question Four in the negative. We respectfully decline, however, to answer Questions One and Two.

Respectfully submitted,

/s/ Caroline D. Glassman
Caroline D. Glassman

/s/ Robert W. Clifford
Robert W. Clifford

/s/ Kermit V. Lipez
Kermit V. Lipez
Associate Justices