*1997 ME 105*

**Kenneth W. FREDETTE**

v.

**SECRETARY OF STATE.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 18, 1997.

Decided May 20, 1997.

Kenneth W. Fredette, Newport, for plaintiff.

Andrew Ketterer, Attorney General, H. Cabanne Howard, Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Kenneth W. Fredette appeals from the judgment entered in the Superior Court (Penobscot County, *Marsano, J.*) granting a summary judgment in favor of the Secretary of State on Fredette's complaint. On appeal, Fredette contends that Maine's recount statute, 21–A M.R.S.A. § 737–A (Supp.1996), violated his right to due process guaranteed by the United States and Maine Constitutions. We find no constitutional infirmity and affirm the judgment.

[¶ 2] Fredette was a candidate for the nomination of the Republican Party for the House of Representatives in Legislative District 125 at the primary election held in June

of 1996. As the officially tabulated vote of that primary election reveals, Fredette finished second in the balloting with 46.7% of the votes. The winner received 53% of the votes. Fredette subsequently requested a recount of the ballots from the Secretary of State pursuant to 21–A M.R.S.A. § 737–A.[1] Pursuant to section 737–A(1)(C), the Secretary of State's office advised Fredette that he would have to post a deposit of $1,000. Fredette refused to post the deposit and instead filed a complaint in the Superior Court on July 12, 1996. In his complaint, Fredette demanded

> equitable relief against the Defendants to wit, said statute be found unconstitutional and/or overbroad as a violation of Plaintiff's rights under the United States Constitution and/or the Maine Constitution; and to furthermore, direct the Defendants to provide said specific performance to wit, conducting are count of the House Republican primary in District 125.

[¶ 3] Fredette filed a motion for a summary judgment. After a hearing, the court entered an order finding the statute to be constitutional and directed the entry of a summary judgment in favor of the Secretary of State pursuant to M.R.Civ.P. 56(c). This appeal followed.

[¶ 4] The election in which Fredette sought to participate has long passed, and we must consider whether Fredette's appeal is now moot. A long-standing requirement for our review is that the case presents a justiciable controversy. If the issues between the parties have become moot, the appeal in nonjusticiable. *Campaign for Sensible Transportation v. Maine Turnpike Auth.*, 658 A.2d 213, 215 (Me.1995). The United States Supreme Court has recognized an exception to mootness for matters that are "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). This exception has been applied in election disputes that remain in court after the disputed election. *See Rosario v. Rockefeller*, 410 U.S. 752, 756 n. 5, 93 S.Ct. 1245, 1249 n. 5, 36 L.Ed.2d 1 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 998 n. 2, 31 L.Ed.2d 274 (1972); *Moore v. Ogilvie*, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494–95, 23 L.Ed.2d 1 (1969). Because the issue raised by Fredette is capable of repetition and will evade review if we do not address the merits of his appeal, we decline to dismiss the appeal as moot. *See Campaign for Sensible Transportation v. Maine Turnpike Auth.*, 658 A.2d at 215 (questions that have become moot should be avoided unless they occur in a context where there is a reasonable likelihood that the same issues will imminently and repeatedly recur in future similar contexts with serious impacts upon important generalized public interest).

[¶ 5] Fredette contends that the court erred in its conclusion that the recount statute was constitutional. He argues that the statute, as applied, violates the due process clauses of the United States and Maine Constitutions.[2] When, as here, there exists

---

1. 21–A M.R.S.A. § 737–A (Supp.1996) provides in part:

 A losing candidate in any election who desires a recount must file with the Secretary of State a written request for a recount within 7 business days after the election. The recount is held under the supervision of the Secretary of State, who shall allow the candidate's representatives or counsel to recount the ballots.
 . . . .
 *1. Deposit for recount.* All deposits required by this section must be made with the Secretary of State when a recount is requested. Once the State Police have taken custody of the ballots and other election materials from the municipalities, the deposit made by the candidate requesting the recount is forfeited to the State if the resulting count fails to change the outcome of the election. If the recount reverses the election, the deposit may be returned to the candidate requesting the recount. The amount of the deposit is calculated as follows.
 . . . .
 *C.* If the percentage difference shown by the official tabulation between the leading candidate and the 2nd-place candidate is 4% or more of the total votes cast for that office, the deposit is $1,000.

2. Me. Const. art. I, § 6–A provides:

 No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of that person's civil rights or be discriminated against in the exercise thereof.

no genuine issues of material fact, we review the grant of a motion for summary judgment to determine whether the trial court erred by concluding that the State was entitled to a judgment as a matter of law. *Vacuum Systems, Inc. v. Washburn,* 651 A.2d 377, 379 (Me.1994).

[¶ 6] In reviewing a due process challenge to a statute, we have articulated the test as follows:

1. The object of the exercise must be to provide for the public welfare.
2. The legislative means employed must be appropriate to the achievement of the ends sought.
3. The manner of exercising the power must not be unduly arbitrary and capricious.

*State v. Rush,* 324 A.2d 748, 753 (Me.1974). We examine the challenged statute under this due process standard, bearing in mind that a statute is presumed constitutional and will be invalidated "only if there is a clear showing by strong and convincing reasons' that it conflicts with the Constitution." *State v. McGillicuddy,* 646 A.2d 354, 355 (Me.1994) (quoting *Opinion of the Justices,* 623 A.2d 1258, 1262 (Me.1993)). The party challenging the statute bears the burden of overcoming the presumption of constitutionality. *Id.*

[¶ 7] The recount statute requires a candidate who has lost an election by more than four percent and desires a recount to deposit $1,000 with the Secretary of State. 21–A M.R.S.A. § 737–A (Supp.1996).[3] Section 737–A, including the deposit requirement, was enacted in 1993 as part of a bill implementing the recommendations of the Special Commission to Review the Electoral Process. The Commission was convened by the Secretary of State in the wake of a ballot tamper-ing incident that occurred in 1992. L.D.1477, Statement of Fact (116th Legis.1993); Special Commission to Review the Electoral Process, Report to the Secretary of State at 1 (Mar. 23, 1993). Prior to the enactment of section 737–A, candidates were entitled to inspect the ballots before requesting a re-count. *See* 21–A M.R.S.A. § 736 (1993), *re-pealed by* Laws P.L.1993, ch. 473, § 30 (ef-fective January 1, 1994). The Commission recommended that this procedure be elimi-nated in order to"expedite the recount pro-cess and eliminate another occasion in which ballots are physically handled by the candi-dates and/or their assistants." The Commis-sion's other recommended alternatives, en-acted as part of section 737–A, were: that a losing candidate who desires a recount must file a written request with the Secretary of State within seven business days after the election; that upon that request, the State Police be charged with transporting the bal-lots to Augusta where the Secretary of State would conduct a recount; and, that a fee would be charged for a recount based on the percentage difference between the winning and losing candidates, a provision designed to discourage frivolous recounts.

[¶ 8] Applying the due process test to Section 737–A, we conclude that the statute passes constitutional scrutiny. Eliminating the ballot inspection procedure increases the degree of ballot security following an election by reducing the number of people handling the ballots. Imposing a deposit requirement on candidates for recounts pursuant to a sliding scale discourages recounts that are frivolous and have little chance of success. These are legitimate legislative objectives re-lated to the public welfare and are appropri-ate to the achievement of the ends sought.[4]

---

U.S. Const. amend. XIV, § 1 provides:
[N]or shall any State deprive any person of life, liberty, or property, without due process of law.

**3.** Pursuant to 21–A M.R.S.A. § 737–A(1), the de-posit is refunded to a candidate who is deter-mined on recount to be the winner.

**4.** The Report of the Commission emphasized the effect of the "ballot tampering scandal" and the need for change. The Report noted,

The recent "ballot tampering scandal" has un-dermined the public's confidence in the electoral process of the State of Maine and, necessarily, public confidence in the very process of govern-ment itself....

....

The Commission believes that it is critical that security surrounding recount ballots be im-proved, but that these changes alone, while nec-essary ... are not sufficient to restore voter confidence in the integrity and honesty of Maine's election processes. More is needed.

....

What is at stake is beginning the process of resurrection and rebuilding the public's faith and

Additionally, the manner of exercising the power is not unduly arbitrary or capricious. Accordingly, Fredette's constitutional challenge is without merit.

The entry is:

Judgment affirmed.

confidence in the electoral processes of Maine and Maine government itself.